Lee **WATSON**, alias W. C. Lewis, Movant-Appellant,

v.

**STATE** of Missouri, Respondent.

No. 56054.

Supreme Court of Missouri, Division No. 1.

Jan. 10, 1972.

Thomas P. Baker, Dexter, for movant-appellant.

John C. Danforth, Atty. Gen., John B. Mitchell, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

This is an appeal from the denial of relief in a proceeding under S.Ct. Rule 27.26, V.A.M.R. On April 5, 1950, Lee Watson was sentenced to life imprisonment upon a plea of guilty to a charge of murder in the first degree. In October 1969 movant filed a motion under S.Ct. Rules 27.25 and 27.26 to withdraw his plea of guilty and to have the judgment and sentence vacated. Counsel was appointed for movant and an evidentiary hearing was held at which movant was present and testified.

The judgment and sentence entered April 5, 1950, stated, in part, as follows: "It is further ordered by the court that said defendant shall never be eligible for parole, and that he be confined to solitary confinement on the 6th day of December of each year as a reminder of the crime he committed on said day. . . ."

At the conclusion of the evidentiary hearing, the court entered findings of fact,

conclusions of law, and denied relief except that the court held that the sentencing court was without authority to make the order above quoted and modified the judgment and sentence by deleting it from the judgment and sentence.

Movant's rule 27.26 motion, as amended, alleged as grounds for vacating the judgment and sentence that (1) trial counsel was ineffective; (2) the plea of guilty was made by his court-appointed attorney and not by movant and that the plea was involuntary; (3) movant was denied a jury trial even though he requested one, which request was made to the sheriff and his attorneys but not to the court because of movant's lack of knowledge of the law; (4) that movant was denied due process of law and his plea was involuntary because the sentencing court failed to determine that his plea of guilty was voluntarily made; and, (5) movant's constitutional rights were denied him because he was illegally brought from Mississippi to Missouri for trial and, therefore, Missouri either did not acquire jurisdiction of movant or illegally acquired jurisdiction.

There is no transcript of the plea proceedings available because at the time the plea was entered it was not the practice of the sentencing court to make a stenographic or written record of the plea proceedings other than the minutes of the clerk and the record of the judge himself. It was therefore necessary for the trial court to determine the issues raised by the rule 27.26 motion upon evidence adduced at the hearing on the motion. State v. Davis, Mo., 438 S.W.2d 232; Mooney v. State, Mo., 433 S.W.2d 542; State v. Mountjoy, Mo., 420 S.W.2d 316.

Movant testified as follows: He was arrested in the latter part of 1949 in Greenville, Mississippi, for fighting; that about three days later, while still in jail in Mississippi, there was a warrant issued in Missouri for his arrest on a first-degree-murder charge; that he denied the charge to the Mississippi officer, and when he re-

fused to sign certain papers the Mississippi officer whipped him and he then signed the papers; that he did not know what the papers were but thereafter the sheriff of Dunklin County, Missouri, took him back to Missouri; that he told no one about the whipping except the Dunklin County sheriff; that he did not appear before the governor of Mississippi nor before any Mississippi judicial officer.

He was held in jail at Kennett, Dunklin County, Missouri, and while there the court appointed two lawyers, Elbert Ford and another attorney, to represent him. Mr. Ford conferred with movant one time for about fifteen minutes at Kennett. At that time movant asked Mr. Ford about a jury trial and Mr. Ford told him he would seek a change of venue to Stoddard County and said they never sent anyone to the gas chamber from Stoddard County. The change of venue was obtained and movant was thereafter held in Stoddard County jail, and the next and last time he saw his lawyer was on the day the guilty plea was entered.

The guilty plea was entered on April 5, 1950. Movant stated that he and Mr. Ford appeared in court; that the judge asked if defendant was ready and Mr. Ford announced ready; that Mr. Ford took movant out of the courtroom, that movant told Mr. Ford he wanted a jury trial, and Mr. Ford told movant to let him handle it, which movant did. They returned to the courtroom where movant's attorney again announced ready; that Mr. Ford then told the court, "Your honor, my client pleads guilty"; that movant himself did not plead guilty; that the judge did not ask movant any questions nor tell movant anything except that after his attorney pleaded him guilty the judge asked movant, "Do you have anything to say before I pass sentence on you?" and movant said, "No"; that the judge then sentenced him to life imprisonment without a parole or pardon and he was supposed to be put in solitary confinement. Movant stated he did not ask the court for a jury trial and said nothing to the court other

than to answer the one question noted above.

According to movant, prior to the plea of guilty, movant's attorney told movant that he could be sentenced to death but that movant would be sentenced to life imprisonment on a plea of guilty, and movant remembers his attorney saying something about putting him on the mercy of the court. After being told this, movant knew he was not going to have a jury trial. Movant also testified that his attorney told him that if he pleaded guilty and was sentenced to life imprisonment that he would serve "maybe five years and I would be out."

Elbert Ford was called as a witness by respondent and testified that he was admitted to the bar in 1923; that he was prosecuting attorney of Dunklin County for eight years beginning in 1931; and that he has prosecuted and defended numerous criminal cases, including first-degree-murder cases, in Dunklin, Pemiscot, New Madrid and Stoddard counties over the years. He and another younger attorney, Mr. Neff, were appointed in January 1950 to represent movant. He consulted with movant first in Dunklin County immediately after being appointed to represent movant and began an investigation of the facts. He and Mr. Neff interviewed people who were supposedly witnesses around Rives, Missouri, and Mr. Neff was sent to Blytheville, Arkansas, to interview a certain cab driver and another person who supposedly transported movant to Mississippi. The record reflects attorneys Ford and Neff made an extensive investigation of the case and we will not burden this opinion with the details. Attorney Ford talked to a sheriff and highway patrolman with reference to alleged statements given by movant admitting movant's guilt. Mr. Ford discussed the alleged statements and other details with movant in order to find out how he might keep the statements from being admitted against movant. Following several discussions with movant and the investigation, Mr. Ford believed the only way to save movant from the death sentence

was for movant to plead guilty with an understanding that the sentence would be life imprisonment. Mr. Ford discussed this approach with the prosecutor and worked out an agreement that the prosecuting attorney would recommend a life sentence. This was discussed with and approved by movant. Mr. Ford also discussed the matter with the judge and the judge agreed that, if anything happened whereby he decided not to accept the recommendation of a life sentence, the only alternative being a death sentence, he would permit the guilty plea to be withdrawn. All of this was explained to movant and he agreed to plead guilty.

On the day the plea was entered, the case was called routinely and Mr. Ford told the court movant wanted to plead guilty. The judge asked movant if he knew what it meant to plead guilty and what the punishment could be, and movant told the judge he did. The judge asked movant if he, movant, realized the crime he would admit doing by the guilty plea was punishable by death or life imprisonment, and movant replied, "yes". The judge asked movant if he pleaded guilty and the movant said, "I do." Mr. Ford testified that movant never asked for a jury trial. The facts concerning the method whereby movant was brought back from Mississippi to Missouri were not investigated because movant told Mr. Ford that he had signed the papers for him to be returned to Missouri.

Following the hearing on movant's rule 27.26 motion, the trial court found that movant's trial attorneys had conducted an extensive and thorough investigation of the facts and, detailing the work done by the attorneys, found that Mr. Ford did in fact make the arrangements with the prosecutor and the sentencing judge, as testified to by Mr. Ford; that in so doing the attorneys used skill and judgment in representing movant; that movant himself entered the plea of guilty in the presence of Mr. Ford; that movant knew the range of punishment for the charged offense before entering the plea; that movant knew he was going to

plead guilty and knew he would not have a jury trial if he did so; that the plea was voluntarily made by movant after full consultation with his attorneys and knowing that if the court did not accept the recommendation of life imprisonment that the plea could be withdrawn and a trial held; that movant never asked the court or his attorneys for a jury trial; that movant entered the plea with a full understanding of what was being done and with full knowledge that the plea of guilty was probably the only way to save movant from a death sentence.

■ The trial court, as the trier of the facts, is the judge of the credibility of the witnesses, and on appeal we defer to his determination of the credibility unless it clearly appears he has abused his discretion. Walster v. State, Mo., 438 S.W.2d 1. In the instant case the trial court had before it conflicting evidence of what transpired prior to and during the plea of guilty proceedings and believed the testimony of Elbert Ford and not that of movant and made findings of fact in accordance therewith. We will not disturb the trial court's findings unless clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67.

■ As to movant's contention that he was denied adequate representation, the court found that movant was competently and effectively represented by the court-appointed trial attorneys. This finding is not clearly erroneous. The point is overruled.

Movant contends he was brought from Mississippi to Missouri in violation of his rights under Art. IV, § 2, United States Constitution, and without complying with the extradition laws. Movant claims the Missouri courts did not properly acquire jurisdiction of movant because of these violations. Article IV, § 2, of the United States Constitution, requires, in short, that a fugitive from justice charged with a crime in one state and found in another be delivered to the charging state upon demand of that state's executive authority.

The trial court stated it did not believe movant was forced to sign extradition hearing waivers but that movant did so voluntarily.

■■ In a proceeding under S.Ct. Rule 27.26, we do not inquire into the validity of extradition proceedings under which a defendant has been returned to this jurisdiction. State v. Estes, Mo., 406 S.W.2d 560, 562. Furthermore, even assuming movant was returned to Missouri by forcible abduction and in violation of the extradition laws, the power of the circuit court to try movant for a crime committed within its territorial jurisdiction is not impaired. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; Hobson v. Crouse, 10 Cir., 332 F.2d 561. The point is overruled.

Movant's third point on this appeal asserts that the trial court erred in failing to sustain movant's motion to vacate because the evidence conclusively shows that movant did not intelligently and voluntarily waive a jury trial and enter a plea of guilty and did not admit in open court that he committed the acts charged.

The court found that movant's attorneys, prior to the plea of guilty being entered, talked with the prosecuting attorney and the trial judge and worked out an arrangement whereby the prosecuting attorney would recommend a life sentence upon a plea of guilty and had an understanding with the court that, if the plea was not acceptable to the court with the punishment fixed at life imprisonment instead of death, the plea could be withdrawn and a trial held; that the movant's attorneys consulted with movant many times and advised him of this; that his attorneys advised him of the range of punishment and that movant knew, prior to the plea, that he was going to enter a plea of guilty and would not have a jury trial. The court further found that movant did not request a jury trial of either the court or his attorneys; that movant entered the plea of guil-

ty himself; that it was freely and voluntarily done with full understanding of what was being done and with the knowledge and understanding that it was probably the only way to save movant from the death sentence.

These findings constitute a conclusion by the trial court that movant, in the circumstances of this case, knowingly and voluntarily waived trial by jury in order to avoid the probability of a death sentence and entered his plea of guilty with the full knowledge of what he was doing and knowing the consequences of his guilty plea. The conclusion that movant knew he had a right to trial by jury is buttressed by movant's own testimony that it was to avoid jury trial in Dunklin County that the change of venue was taken to Stoddard County. Furthermore, movant's argument that the plea of guilty, allegedly involuntary, was induced by his attorney's statement, according to movant, that he would only have to serve five years on a life-imprisonment sentence further evidences a conscious knowledge on movant's part that the consequences of a plea of guilty would be a life sentence and there would be no jury trial.

 It is not constitutionally impermissible for a defendant to plead guilty and consent to the imposition of a prison sentence in order to avoid the risk of a probable death penalty at the hands of a jury. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. The record supports the court's finding that this is what took place in the instant case. The plea of guilty here is not vulnerable to attack merely on the contention that the sentencing judge did not require the movant to admit in open court the commission by him of the particular acts charged where, as here, the evidence of the circumstances giving rise to and attendant upon the plea of guilty amply show that the plea was freely, voluntarily, and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, cited by movant is not retroactive. Crego v. State, Mo., 447 S.W.2d 550. McCarthy v. United States,

394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, was based solely on a construction of Rule 11 of the Federal Rules of Criminal Procedure applicable to federal courts and not to state courts, and Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed. 2d 16, restricted the application of McCarthy, supra, even within the federal system to those cases in which the guilty pleas were accepted in federal courts after April 2, 1969, the date McCarthy was decided.

State v. Blaylock, Mo., 394 S.W.2d 364, is distinguishable on its facts. In Blaylock the defendant did not enter a plea of guilty and the court did not inquire if defendant assented to the plea of guilty entered by his attorneys. In the instant case the trial court found that it was movant himself who entered the guilty plea. In State v. Williams, Mo., 361 S.W.2d 772, the defendant did not enter any plea himself and the plea of guilty entered in his behalf by his attorneys was equivocal on its face. Here there was no equivocation at all and the plea of guilty in the circumstances of the instant case constituted an admission of the acts alleged in the charge.

Movant testified his trial counsel told him that on a life sentence he would probably only serve five years and be out. It is argued that this induced movant to enter the involuntary plea of guilty. As stated, the trial court found the plea to be voluntary. The evidence shows that, although movant was directly told by the sentencing judge that he would never be eligible for parole at the time of sentencing, movant made no effort to withdraw his plea for a period of almost twenty years. The credibility of the witnesses was for the trial court's determination, and the court did not believe movant.

The trial court's findings are not clearly erroneous. We have considered the authorities cited by movant and they do not require that this judgment and sentence entered on a plea of guilty in 1950 be vacated.

The judgment is affirmed.

All of the Judges concur.