STATE of Missouri, Respondent,

v.

Brian Keith MOORE, Appellant.

No. 60867.

Supreme Court of Missouri,
En Banc.

May 17, 1979.

Christelle Adelman-Adler, Asst. Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Brian Keith Moore, convicted of first degree murder and attempted robbery in the first degree by means of a dangerous and deadly weapon, has appealed contending the trial court erred (1) in failing to discharge him because his warrantless arrest was without probable cause, (2) in failing to suppress certain evidence and identification testimony allegedly procured by illegal means, (3) in failing to instruct the jury on second degree murder and manslaughter, and (4) in submitting the case under the felony-murder rule of § 559.010, RSMo 1969,[1] because the bystander killed during the attempted robbery in which appellant participated was shot not by appellant but by another bystander. The Court of Appeals, affirming the robbery conviction, denied appellant's first three contentions but transferred the case, after opinion, under Rule 83.02 for our consideration of point four. Portions of the Court of Appeals' opinion are incorporated without quotation marks. Deciding the cause as though here on original appeal, Rule 83.09, art. V, § 10, Constitution of Missouri, we affirm.

During the late evening of July 28, 1975, appellant and two other men entered the "Emergency Room Lounge," a tavern located in the City of St. Louis, and after positioning themselves at various places in the room, appellant, carrying a shotgun, announced a "holdup." One accomplice, Ross Hogan, drew a pistol and fired at Albert "Rip" Williams, a customer sitting in a booth, as Williams was drawing a pistol from his waistband. Hogan's shot missed Williams but one of two return shots fired by Williams struck Ross Hogan. This was followed by a blast from appellant's shotgun which struck Williams on the head and shoulder knocking him to the floor. In that position Williams saw a man's foot, and believing it belonged to one of the robbers, he shot it.

As the robbers withdrew from the aborted robbery through the front door they fired several more shots into the barroom, one of which wounded Williams again. After they had fled, it was discovered that two other customers had been caught in the gunfire. One received a "shotgun burn" and the other, Lawrence Meadows, had been fatally wounded in the head by two bullets. At trial, a police ballistics expert identified the fatal bullet as coming from Williams' gun.

Two days after the incident, two detectives contacted an informant with whom they had never worked, but about whom they were familiar. The informant told the detectives that he had learned from a relative of appellant that the perpetrators of the attempted robbery were Ross Hogan, a man named Carl, and appellant. The police were aware of Hogan's involvement, as he had been arrested and was hospitalized for treatment of shotgun wounds. The infor-

---

1. Section 559.010 was repealed effective after the commission of the homicide at issue and controlled the prosecution of Moore's case. Laws 1975, p. 408.

mant advised the police that appellant had been shot in the right foot and was on crutches; that he could be found in either the 4100 block of Ashland Avenue or the 4300 block of Labadie. The same day they received the information, the two detectives saw appellant in the 4100 block of Ashland with a bandaged right foot and walking with the aid of crutches. When approached by the officers, appellant, who had no identification papers, seemed nervous and gave the alias of Joseph Madison, stating that he was 17 years old. He attributed his injury to having stepped on a rusty nail but when the police removed his shoe they noticed two wounds, one on each side of his ankle. Appellant was arrested and taken to a hospital for treatment. His shoe, held for evidence, was punctured in the places corresponding with his ankle wounds.

A physician at the hospital confirmed that appellant's ankle injury was a gunshot wound and appellant then gave his correct name and admitted his participation in the robbery but denied any shooting. When police learned from his mother that appellant was 16 years of age, he was immediately taken to the Juvenile Detention Center. Appellant was subsequently placed in a lineup and identified by two witnesses as one of the robbers.

■ Appellant initially argues that the trial court erred in failing to "discharge" him by reason of the State's failure to establish probable cause for his warrantless arrest. This point is without merit. An illegal arrest does not divest the trial court of jurisdiction to try the case. *Watson v. State*, 475 S.W.2d 8, 12 (Mo.1972). As a part of this argument, appellant also contends that a statement was illegally taken from him "prior to taking him to the juvenile detention center." This portion of the argument too must fail because it is conceded that the "statement" was not used in evidence.

Appellant's second contention is that certain physical evidence (his shoe with the bullet punctures) and identification testimony should have been suppressed as having been obtained in connection with the al-

legedly illegal arrest. This requires a determination of whether there was probable cause for appellant's arrest. "Probable cause" is said to exist where the facts and circumstances within the officers' knowledge and of which they have reliable and trustworthy information would warrant a man of reasonable caution to believe that the person being arrested had committed the offense for which he has been placed in · custody. *Ker v. California*, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *State v. Wiley*, 522 S.W.2d 281, 287 (Mo. banc 1975).

■ Appellant argues that there was no reasonable ground for his warrantless arrest, particularly since the arresting officer had not personally known the informant nor had personal experience with him. We disagree. As stated in *State v. Wiley*, 522 S.W.2d at 288: "There is no absolute requirement that the informant be one of previous reliability. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

"The true inquiry therefore is whether the informant's present information is reliable. As long as the corroboration of the information through other sources, even though the matters are innocuous, reduces the chances of a 'reckless or prevaricating tale,' the information, even though hearsay, may form the basis of probable cause for an arrest."

■ Under the circumstances of this case, we have no doubt that probable cause existed for appellant's arrest. The arresting officers had been assigned the specific task of investigating the crime which had occurred two days earlier involving three youths, one of whom had been shot in the foot and had been observed limping from the scene of the crime. Another of the robbers was then in police custody. The informant had dealt with police previously, albeit not the particular arresting officers, but they were aware of his past contributions. The informant, attributing his information to a relative of appellant, advised the police that appellant had been shot in

the right foot, was on crutches and could be found in the 4100 block of Ashland. And exactly as told, the police found appellant, complete with crutches and bandaged right foot, in the 4100 block of Ashland. He fit the general description of one of the robbers and gave an implausible explanation for his injury. The information accurately detailed by the informant was fully corroborated by the personal observation of the arresting officers. The accusation of appellant is thus readily distinguished from the rumor or vague circumstances decried in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), upon which appellant relies. The arrest was lawful. *State v. Wiley; State v. Kent*, 535 S.W.2d 545 (Mo.App.1976). Hence, the seizure of the evidence and its use at trial was lawful. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *Wilkinson v. State*, 461 S.W.2d 283 (Mo.1970).

Appellant also asserts *State v. Wade*, 531 S.W.2d 726 (Mo. banc 1976), as a purported barrier to the use by the State of his shoe and identification testimony linking him to the crime. *Wade* holds that it is reversible error to admit testimony regarding a confession of a juvenile offender made prior to being taken to the juvenile authorities. That case has no application here because, as previously noted, the State refrained from introducing or using defendant's inculpatory statements.

Appellant cites *State v. Ross*, 516 S.W.2d 311 (Mo.App.1974), and argues that the shoe should have been excluded as having been obtained as a result of his inadmissible confession. *Ross* is readily distinguishable, because the taking of the shoe was not the result of and bore no relation to appellant's voluntarily suppressed confession. The shoe with the bullet holes was inherently suspicious, whereas in *Ross*, police were led to evidence only by reason of the juvenile's confession. The shoe, not obtained by reason of anything illegally said or gained, was seized pursuant to a lawful arrest and thus admissible.

■ Appellant next urges that the trial court erred in failing to instruct the jury on second degree murder and manslaughter. He asserts that felony-murder under the then applicable murder statute, § 559.010, RSMo 1969, necessarily embodied the lesser homicides.

The submission of lesser homicides under an information drawn as here under § 559.010 was at the time of appellant's trial governed by this Court's pattern instructions approved January 1, 1975, effective March 1, 1975.[2] Though the charge was made under the general first degree murder section, 559.010, only felony-murder was submitted to the jury, not conventional first degree murder. Caveat "a" in the Notes on Use to the form of MAI–CR 6.02 then in effect stated,

Where *felony-murder* . . . is the *only* murder submitted . . . lesser offense instructions will not be given *automatically.* Ordinarily, where there is sufficient evidence to warrant the giving of a felony murder instruction, there will be no evidence to support the submission of a lesser offense.

There may be exceptional cases, however, where there is evidence warranting a finding that the murder was not committed in the perpetration of or attempt to commit the felony relied upon to authorize a felony-murder instruction . . . . But in the absence of evidence to justify it a lesser offense instruction should not be given where felony-murder alone is submitted. *State v. Ford*, 495 S.W.2d 408 (Mo.1975). (Citations omitted and emphasis in original.)

*See also State v. Stapleton*, 518 S.W.2d 292, 301 n. 1 (Mo. banc 1975). Appellant can point to no evidence permitting a finding that "the murder was not committed in the perpetration of or attempt to commit the felony"; thus there was no error in re-

---

**2.** Although appellant's trial took place after revisions in the MAI–CR 6.00 series effective September 28, 1975, those revisions applied only to trials for homicides committed on or

after that date in order to conform with the 1975 legislative revisions to the homicide statutes. Laws 1975, p. 411.

fusing to submit instructions on second degree murder and manslaughter and his claim must necessarily fail.

Finally appellant contends, "Defendant's actions do not fulfill the requirements of V.A.M.S. 559.010 in that a bullet from defendant's gun did not take the victim's life, and in order to be guilty of homicide, the act of homicide must be done by defendant," and concludes outright reversal is required. Stated otherwise, appellant claims that felony-murder requires a finding that he or one of his accomplices fired the shot that killed Meadows. This Court considered the felony-murder rule under facts similar to the case at bar in State v. Majors, 237 S.W. 486 (Mo.1922). Majors and two accomplices entered a room where the occupants were gambling. They robbed the gamblers and in the course of the robbery a gun battle ensued between one of the accomplices and Wade, a bystander. During the shooting, Gardner, one of the gamblers, was fatally wounded. The jury was instructed that if it found that the defendant or one of his accomplices shot the deceased in an effort to commit a crime, he would be guilty of murder. The murder conviction was reversed and the case remanded because the trial court failed to give converse instructions proffered by defendant which required a verdict of not guilty if the jury found that the fatal shot was fired by someone other than the defendant or someone acting in concert with him. The court without elaboration stated that such an instruction was a correct declaration of the law.

More recently, in State v. Glenn, 429 S.W.2d 225 (Mo.1968), the defendant contested his conviction under the felony-murder rule on the ground that the murder instruction did not require a finding that he fired the fatal shot. Affirming, the court said that it "would have been preferable for the instruction to have included such a finding," but when considered with another instruction which submitted murder in the conventional manner and evidence from which an inference could be drawn that the defendant had fired the fatal shot, the felony-murder instruction was not prejudicially erroneous. Glenn, 429 S.W.2d at 236. In

neither Majors nor Glenn do we find a statement of the rationale for the requirement that the fatal act be performed by defendant or someone acting in concert with him.

It is well established in this state that any person involved in the underlying felony may be held accountable for every homicide committed in the perpetration of the felony even though the fatal act was committed by a co-felon. State v. Paxton, 453 S.W.2d 923 (Mo.1970); State v. Messino, 325 Mo. 743, 30 S.W.2d 750 (1930); State v. Nasello, 325 Mo. 442, 30 S.W.2d 132 (1930); State v. Hart, 292 Mo. 74, 237 S.W. 473 (1922). Thus appellant's assertion that under § 559.010, RSMo 1969, "the act of homicide must be done by the defendant" before he may be found guilty is clearly incorrect. It has also been held in State v. Adams, 339 Mo. 926, 98 S.W.2d 632, 637 (1936):

> . . . that when the homicide is within the res gestae of the initial crime and is an emanation thereof, it is committed in the perpetration of that crime in the statutory sense.

See also State v. Messino, 325 Mo. 743, 30 S.W.2d 750 (1930); State v. Mullen, 532 S.W.2d 794 (Mo.App.1975); State v. McClain, 531 S.W.2d 40 (Mo.App.1975). In all of these cases there was sufficient evidence from which to draw an inference that the killing had been done at the hand of the defendant or someone acting in concert with him and not by a third person as in Majors. Therefore, the question to be decided is whether the felony-murder rule applies to the circumstances of this case where the evidence clearly indicates that the fatal shot was not fired by the appellant or an accomplice but by a bystander attempting to thwart the robbery.

In State v. Glover, 330 Mo. 709, 50 S.W.2d 1049 (1932), the defendant was convicted of murder in the first degree for setting a fire which killed a fireman who was fighting the flames. On appeal he contended that the killing was unintentional and that he did not foresee that anyone would be killed as a result of the arson. The court affirmed, reasoning, 50 S.W.2d at 1053:

[E]ven though the homicide be unintentional yet, if it be committed in the course of perpetrating the felony, and is *a natural and proximate result* thereof, such as the defendant reasonably was bound to anticipate—and therefore especially where the *felony is dangerous and betokens a reckless disregard of human life*—the homicide will be first degree murder under the statute. (Emphasis ours.)

The Illinois Supreme Court adopted the foreseeability concept in *People v. Hickman*, 59 Ill.2d 89, 319 N.E.2d 511, *cert. denied*, 421 U.S. 913, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1974). Hickman appealed from a felony-murder conviction claiming that he could not be guilty of murder where a pursuing police officer was mistakenly shot and killed by a fellow officer also in pursuit of the defendant and his accomplices. The court quoted with approval from *People v. Payne*, 359 Ill. 246, 194 N.E. 539, 543 (1935):

It *reasonably might be anticipated* that an attempted robbery would meet with resistance during which the victim might be shot either by himself or some one else in attempting to prevent the robbery and those attempting to perpetrate the robbery would be guilty of murder. (Emphasis ours.)

In *Payne*, the evidence was inconclusive as to whether the deceased, a robbery victim, was shot by his brother, also a robbery victim, or by one of the defendant's accomplices.

On facts similar to *Hickman*, the Michigan courts have also affirmed first degree murder convictions. *People v. Podolski*, 332 Mich. 508, 52 N.W.2d 201, *cert. denied*, 344 U.S. 845, 73 S.Ct. 62, 97 L.Ed. 657 (1952); *People v. Smith*, 56 Mich.App. 560, 224 N.W.2d 676 (1974). In *Podolski*, relying on a proximate cause rationale, the court stated, 52 N.W.2d at 204:

When a defendant deliberately engenders an affray, deliberately using therein a lethal weapon, it must be considered to be within his intent that death should result from the affray as a natural and *probable consequence* of his acts, where the death is directly attributable to the affray and not resulting from some independent intervening cause. (Emphasis ours.)

In *Johnson v. State*, 386 P.2d 336 (Okl.Cr.App.1963), the evidence was inconclusive as to the source of the bullet which killed the deceased police officer. The court approved instructions which stated in part that "if you find . . . that such felony set in motion a chain of events which were or should have been within his contemplation when the motion was instigated, it is then immaterial as to whether the defendant fired the fatal bullet." 386 P.2d at 339.

Similarly a Texas court in *Miers v. State*, 157 Tex.Cr.App. 572, 251 S.W.2d 404 (1952), rejected the defendant's proffered instruction that the jury find him not guilty if it did not find that he had fired the fatal shot. The evidence indicated that the deceased bystander either shot himself or was shot by the defendant while trying to thwart the latter's escape from the robbery scene.

In the case at bar, appellant and his accomplices entered the tavern armed with a shotgun and a pistol with the intent to rob the bartender. This occurred at a time when it was open for business and customers were present. Witnessing these facts and the announcement of a holdup, Williams pulled a pistol from his waistband and when Hogan fired at him, he returned the fire. It was reasonably foreseeable that the robbery attempt would meet resistance. This set into motion the chain of events which caused the death of Lawrence Meadows. Whether the fatal act was done by the defendant, an accomplice, another victim, or a bystander is, under the facts here, not controlling. The significant factor is whether the death was the natural and proximate result of the acts of the appellant or of an accomplice. Of course, an independent intervening cause might relieve appellant of criminal responsibility for the killing. But in this case the act of Williams was not an independent act because it was the attempted robbery by the appellant and his accomplices which provoked Williams to pull the pistol he was carrying from his waistband and it was the

shot fired from one of the felons which brought Williams' return fire.

Insofar as *Majors* and *Glenn* are inconsistent with this opinion, they must no longer be followed. The judgment of the circuit court of the City of St. Louis is affirmed.

MORGAN, C. J., BARDGETT, DONNELLY, SEILER and SIMEONE, JJ., and FINCH, Senior Judge, concur.

WELLIVER, J., not participating because not a member of the Court when cause was submitted.