**Brian Keith MOORE, Appellant,**

v.

**Donald W. WYRICK, Warden, and John Ashcroft, Attorney General of the State of Missouri, Appellees.**

**No. 84–1926.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1985.

Decided July 10, 1985.

As Amended on Denial of Rehearing En Banc Sept. 6, 1985.

**1254**

Douglas Rush, St. Louis, Mo., for appellant.

John M. Morris, Jefferson City, Mo., for appellees.

Before LAY, Chief Judge, and John R. GIBSON and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Brian Moore appeals the dismissal of his 28 U.S.C. § 2254 petition for writ of habeas corpus. Moore contends that he was deprived of rights guaranteed by the due process clause of the fourteenth amendment when the Missouri Supreme Court retroactively applied a new and expansive construction of the Missouri felony murder statute to affirm his conviction. We agree and reverse the dismissal of Moore's petition.

Moore stands convicted of first degree felony murder. The events giving rise to this conviction occurred on July 28, 1975, when Moore and several cohorts attempted to rob a tavern located in St. Louis, Missou-

ri. During the attempt, Albert Williams, one of the tavern's patrons, pulled a gun and exchanged several shots with Moore and his accomplices. In the exchange of gunfire, another patron was fatally wounded. Ballistic tests later showed that the fatal shots were fired not by Moore or one of his accomplices, but rather were fired by Williams. Despite this fact, Moore was charged with and convicted of first degree felony murder. This conviction was affirmed by the Missouri Supreme Court. *State v. Moore,* 580 S.W.2d 747 (Mo.1979) (en banc) (*Moore I* ).

Moore contends that in affirming his conviction the Missouri Supreme Court unforeseeably expanded the scope of Missouri's felony murder statute to encompass a particular factual situation previously determined by that court to be beyond the reach of the statute. *Compare State v. Moore,* 580 S.W.2d 747 (Mo.1979) (en banc) (construing state's felony murder statute to encompass killing by an uninvolved bystander), *with State v. Majors,* 237 S.W. 486 (Mo.1922) (limiting state's felony murder statute to situations in which defendant or an accomplice commits the killing). Moore asserts that this newly expanded judicial interpretation of the state's felony murder statute cannot, consistent with the due process clause of the fourteenth amendment, be applied retroactively to his case, but rather may only be applied prospectively.

To support this position, Moore relies primarily on the Supreme Court case of *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). In *Bouie,* petitioners asserted that the retroactive application of an expanded judicial interpretation of South Carolina's criminal trespass statute "violated the requirement of the Due Process Clause that a criminal statute give fair warning of the conduct which it prohibits." *Id.* at 350, 84 S.Ct. at 1701. The Supreme Court agreed with petitioners' position and held that "[w]hen a[n] * * * unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal

liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime." *Id.* at 354–55, 84 S.Ct. at 1702–03. Further, the Court held that this prohibition applies not only when judicial construction of a statute makes an action "which was innocent when done, criminal," but also when as here judicial construction "aggravates a crime, or makes it greater than it was, when committed." *Id.* at 353, 84 S.Ct. at 1702 (emphasis omitted) (quoting *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798)).

In light of the Supreme Court's decision in *Bouie,* the issue before this court is whether the Missouri Supreme Court's action in affirming Moore's conviction constituted an "unforeseeable" expansion of the Missouri felony murder statute. If with reference to prior Missouri decisions the expansion was unforeseeable, then the decision may not be applied retroactively to Moore because to do so would deprive Moore of the "fair warning" to which he is entitled under the due process clause of the fourteenth amendment. *Id.* at 354–55, 84 S.Ct. at 1702–03. *See also Marks v. United States,* 430 U.S. 188, 192, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977); *Hamling v. United States,* 418 U.S. 87, 116, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); and *Douglas v. Buder,* 412 U.S. 430, 432, 93 S.Ct. 2199, 2200, 37 L.Ed.2d 52 (1973) (each describing the test in terms of "unforeseeability" and "fair notice" or "fair warning").

As an initial matter, we note that this same issue was presented to and determined by the Missouri Court of Appeals in Moore's state post-conviction relief proceedings. *Moore v. State,* 651 S.W.2d 578 (Mo.App.1983). The court of appeals rejected Moore's position and held that the Missouri Supreme Court's construction of the state's felony murder statute was foreseeable and could "be given retroactive application to [Moore] without violating the due process clause of the United States Constitution." *Id.* at 581.

■ The state now contends that the Missouri Court of Appeals' determination with respect to foreseeability constitutes a finding of historical fact and as a result is binding upon this court. We disagree. A finding that a change in the law was foreseeable, while perhaps involving a development of certain underlying historical facts, is at bottom an adjudication of Moore's federal due process rights determined by the application of federal constitutional principles. While this court must defer to a state court's factual findings if those findings are "fairly supported" in the record, 28 U.S.C. § 2254(d)(8); *see also Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983) and *Johnson v. Nix,* 763 F.2d 344, 345 (8th Cir.1985), this court is not bound by a state court's application of federal constitutional principles to those facts, *Sumner v. Mata,* 449 U.S. 539, 543–44, 101 S.Ct. 764, 767, 66 L.Ed.2d 722 (1981). As such, the issue of whether the judicial expansion of a criminal statute was or was not foreseeable and consequently can or cannot be applied retroactively is a question of federal law subject to this court's independent determination. *Cf. Weaver v. Graham,* 450 U.S. 24, 33, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981) (ex post facto law claim is one of federal law).

We turn now to the merits of Moore's appeal. At the time of Moore's involvement in the attempted robbery giving rise to the present action, the Missouri felony murder statute provided that "every homicide which shall be committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder in the first degree." Mo.Rev.Stat. § 559.010 (1969) (repealed September 28, 1975). As Moore points out, the Missouri Supreme Court, in construing this statute, could have adopted either of two mutually exclusive theories of criminal liability: the agency theory of felony murder or the proximate cause theory of felony murder.

■ Under the agency theory of felony murder, two basic elements must be established by the state in order to convict the

defendant. First, the state must prove that the *defendant* or an *accomplice* actually killed the victim. If the state is unable to establish this threshold element, then the defendant cannot be guilty of felony murder and the state's felony murder statute will not be applicable. Second, if, however, the state is able to show that the defendant or an accomplice was the actual killer, the state must then prove that the killing was sufficiently related to the felony to be considered as having been committed in the perpetration of the felony. To establish this second element, the state is required to prove that the killing was the natural and proximate result of the felony. If these two primary elements are established, the law attaches the specific intent to commit the related felony to the homicide and will conclusively presume an intent to kill even though the murder itself may not have been specifically intended.

The proximate cause theory of felony murder, on the other hand, differs from the agency theory in one crucial respect. Under the proximate cause theory, unlike the agency theory, the actual identity of the killer is irrelevant in determining the general applicability of the state's felony murder statute. Instead, a determination of whether the death occurred as the natural and proximate result of the felony is dispositive both with respect to the issue of the defendant's personal responsibility and with respect to the issue of whether the killing can be considered to have occurred during the perpetration of the felony. As with the agency theory, intent will be conclusively presumed once it is shown that the felony and the homicide are proximately related.

The key difference between these two theories then is one of identification. Very simply, under the agency theory either the defendant or an accomplice must commit the killing in order for the state's felony murder statute to be applicable. Under the proximate cause theory, however, responsibility can attach regardless of whether the victim was killed by the defendant, an accomplice, another victim, or a bystander, so long as the death is proximately related to the commission of the felony.

On direct appeal to the Missouri Court of Appeals following his conviction, Moore asserted (as he has throughout) that at the time of his crime Missouri followed the agency theory of felony murder. Thus, because neither he nor an accomplice committed the killing, the state's felony murder statute was inapplicable, and as a result could not be used as a basis to convict him of first degree felony murder.

To support this position, Moore relied primarily on the factually indistinguishable Missouri Supreme Court case of *State v. Majors*, 237 S.W. 486 (Mo.1922). In *Majors*, the defendant (Majors) and several confederates attempted to rob a late night poker game. As in the present case, one of the individuals attending the game (Wade) drew a gun and in the ensuing exchange another person attending the card game was fatally wounded. Unlike the present case, however, it was not clear whether the victim had been killed by one of the robbers or by the bystander, Wade. *Id.* at 487–88.

Majors was eventually captured and charged with felony murder. At trial, Majors requested that the following instruction be given:

> * * * The court instructs the jury that if you find and believe from the evidence that the shot that killed [the victim] was not fired by the defendant, or by someone with whom he was acting in concert, if any, then you must find the defendant not guilty.

*Id.* at 486. The trial court refused to give this instruction and Majors was convicted.

On appeal to the Missouri Supreme Court, Majors asserted that the failure to give this requested instruction constituted reversible error. The Missouri Supreme Court agreed and reversed Majors' conviction. In so doing, the court held that this instruction was a "correct declaration of [the] law" and that "such an instruction was warranted upon the evidence adduced by the state." *Id.* at 488. Moore contends that although never specifically mentioning

the agency theory or the felony murder statute, in ruling the way it did in *Majors*, the Missouri Supreme Court effectively embraced the agency theory of felony murder.

The Missouri Court of Appeals agreed with Moore and concluded that "under the holding of *Majors* and under the facts of this case, [Moore] could not be found guilty of felony murder [since the killing was by one with whom he was] not acting in concert." *State v. Moore*, No. 38,783, slip op. at 7–8 (Mo.App. June 27, 1978). The court of appeals, however, while recognizing that it "would be obliged to reverse [Moore's] conviction for first degree murder by reason of *State v. Majors*," *id.* at 9, concluded that the "holding [of *Majors*] should be · reexamined," *id.* at 8. Consequently, the court of appeals transferred Moore's case to the Missouri Supreme Court. The court did so under article 5 section 10 of the Missouri constitution which allows a case to be transferred to the state supreme court "for the purpose of *reexamining* the *existing* law * * *." Mo. Const. art. V, § 10 (emphasis added); *see to the same effect* Mo.R.Crim.P. 30.27 and Mo.R.Civ.P. 83.02.

The Missouri Supreme Court, following transfer from the court of appeals, specifically recognized *Majors* as a felony murder case. *State v. Moore*, 580 S.W.2d at 751. The supreme court also acknowledged that this was the first Missouri case since *Majors* in which a bystander rather than the defendant or an accomplice was responsible for the killing. *Id.* Given this fact, the court stated that the specific question presented was "whether the felony-murder rule applies to the circumstances of this case where the evidence clearly indicates that the fatal shot was not fired by * * * [Moore] or an accomplice but by a bystander attempting to thwart the robbery." *Id.*

Answering this question in the affirmative, the Missouri Supreme Court explicitly overruled its prior decision in *Majors, id.* at 753, and held, directly contrary to *Majors*, that the applicability of the Missouri felony murder statute does not depend on whether "the fatal act was done by the defendant,

an accomplice, another victim, or a bystander * * *." *Id.* at 752. Rather, "[t]he significant factor is whether the death was the natural and proximate result of the acts of the appellant or an accomplice." *Id.*

In this case, the court concluded, Moore reasonably could have foreseen that the robbery attempt would meet with resistance and that this resistance might set into motion a chain of events that would result in the death of a bystander. *Id.* The court then affirmed Moore's conviction. In so doing, the Missouri Supreme Court clearly embraced the proximate cause theory of felony murder and rejected the agency theory of felony murder which it had previously adopted in *Majors.*

■ Under these circumstances, we can only conclude that the Missouri Supreme Court's decision in *Moore I* effected a significant change in Missouri's felony murder law as it existed prior to this decision and as a result expanded the scope of the felony murder statute beyond its previous boundaries. Because the Missouri Supreme Court's decision in *Moore I* effected a change in the law, which, if applied retroactively would materially expand Moore's criminal liability, this change cannot, consistent with *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), be applied retroactively if this change in the law was constitutionally unforeseeable. *Id.* at 354–55, 84 S.Ct. at 1702–03.

The state raises three contentions with respect to the issue of foreseeability. First, the state claims that the plain language of the statute provided Moore with fair warning that his conduct might, under these circumstances, be considered felony murder. The state's argument would be persuasive had Moore's case presented a question of first impression in Missouri. However, in light of *State v. Majors*, which narrowed the scope of the felony murder statute, we are not confronted with the statute "as written" but rather as judicially construed. As such, whether or not the plain language of the statute would, absent

prior judicial construction, give Moore fair warning that his conduct might constitute felony murder is irrelevant. Instead, we must determine whether the expanded scope of the Missouri felony murder statute was foreseeable in light of its previously narrow construction.

The state next contends that even if *Majors* effectively restricted the scope of the Missouri felony murder statute cases decided after *Majors* left the issue sufficiently unsettled that the agency theory could no longer be relied upon as the law of the state. In making its argument, the state relies primarily on two cases: *State v. Glover*, 330 Mo. 709, 50 S.W.2d 1049 (1932), and *State v. Adams*, 339 Mo. 926, 98 S.W.2d 632 (1936). In these cases the court held that so long as the homicide was the "natural and proximate result [of the felony,]" *Glover*, 50 S.W.2d at 1053, or was "within the res gestae of the initial crime," *Adams*, 98 S.W.2d at 637, the homicide, even though unintentional, will be considered to have been committed in the course of perpetrating a felony. As a result, the felony murder statute will be applicable. The state argues that these statements, which certainly demonstrate an element of proximity in Missouri's felony murder analysis, undermined the *Majors* decision and left its viability unsettled. We disagree.

In both *Glover* and *Adams*, either the defendant or an accomplice was clearly identified as the one directly responsible for the killing. Thus, the question of identification, which was crucial to the *Majors* decision (and to the agency theory), was not before the court. Rather, in both of these cases, the issue presented was whether the death was sufficiently related to the felony to be considered as having been committed in the perpetration of the felony.

This issue, however, along with the court's discussion of the "natural and proximate result" or the "res gestae" of the felony is equally relevant in a jurisdiction that has adopted the proximate cause theory. As previously noted, both theories are identical except for the agency theory's threshold requirement that the defendant or an accomplice be identified as the killer. Once this element has been established, however, both theories require that a proximate cause relationship between the felony and the murder be proven. Thus, the Missouri Supreme Court's discussion of this element in *Glover* and *Adams*, neither of which presented any issue of identification, casts no shadow on the *Majors* threshold requirement that the defendant or an accomplice be identified as the killer.

The state points to several other cases which it claims undermine *Majors*. However, as with *Glover* and *Adams*, in none of these cases was the identity of the killer in question. As such, the issue presented in *Majors* and, more importantly, the court's decision in *Majors* were never reexamined or questioned by the Missouri courts. *See State v. Messino*, 325 Mo. 743, 30 S.W.2d 750 (1930) (defendant or accomplice killed police officer while escaping from a bank robbery) and *State v. Mullen*, 532 S.W.2d 794 (Mo.App.1975) (defendant fired the fatal shot during a robbery). We conclude that no Missouri case decided after *Majors* and prior to Moore's crime undermined the requirement established in *Majors* that either the defendant or an accomplice must actually kill the victim for the felony murder statute to be applicable.

Finally, the state argues that the adoption of the proximate cause theory in other jurisdictions provides notice that Missouri might adopt the same interpretation. Again, had the Missouri statute been previously unconstrued, the state's argument might have merit. However, in light of prior unquestioned Missouri authority directly on point, it cannot reasonably be argued that cases from other jurisdictions supply the fair warning that is constitutionally required by the due process clause. *See Bouie*, 378 U.S. at 359–60, 84 S.Ct. at 1705–06.

We conclude that the change in law judicially effected in *Moore I* was constitutionally unforeseeable and thus cannot be applied retroactively. First, both the state court of appeals and the state supreme court recognized that *State v. Majors* was indistinguishable from the present case.

Second, the court of appeals concluded that *Majors* represented the existing and controlling law and transferred Moore's case to the state supreme court for the express purpose of re-examining that law. Third, in adopting the proximate cause theory, the state supreme court recognized that no case other than *Majors* had presented the precise question involved and then specifically overruled *Majors*. In so doing the court significantly expanded the scope of the state's felony murder statute. Finally, no case arising between *Majors* and *Moore I* undermined the authority of *Majors*.

Given these factors, we can only conclude that until *Moore I*, *Majors* was the controlling law, and no intervening case has been found which in any way challenged or weakened its authority. As a result, the change in law adopted by the state supreme court expanding the scope of the state's felony murder statute was constitutionally unforeseeable. Therefore, the new rule may not be applied retroactively to Moore's case and may only be applied to conduct occurring after the date of the decision in *Moore I*. *See Bouie*, 378 U.S. at 354, 84 S.Ct. at 1703.

Accordingly, Moore's petition should be granted and the district court's order of dismissal must be reversed; however, Moore's release is dependent upon the completion of his sentence on the underlying first degree attempted robbery conviction that was affirmed by the Missouri Supreme Court in *State v. Moore*, 580 S.W.2d 747 (Mo.1979) (en banc).

JOHN R. GIBSON, Circuit Judge, dissenting.

The court today frees Brian Keith Moore, finding that he was deprived of due process by the Missouri Supreme Court's retroactive application of an unforeseeable construction of Missouri's felony murder statute. In so holding, the court ignores the ambiguity that existed in Missouri's felony murder doctrine prior to Moore's case and fails, directly contrary to *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983), to give proper deference to Missouri court decisions on an issue of state law. Thus, I respectfully dissent.

The court's decision today depends on its conclusion that the Missouri Supreme Court in its review of Moore's conviction for felony murder "explicitly overruled its prior decision in *Majors* * * * and held, directly contrary to *Majors*, that the applicability of the Missouri felony murder statute does not depend on whether 'the fatal act was done by the defendant, an accomplice, another victim, or a bystander * *.' " *Supra* at 1257. In so concluding, the court both gives *State v. Majors*, 237 S.W. 486 (Mo.1922), an unjustifiably expansive reading and overstates the supreme court's actual holding in *State v. Moore*, 580 S.W.2d 747, 751 (Mo.1979) (en banc) (*Moore I*).

In *Majors*, as the supreme court pointed out in its discussion of the case in *Moore I*,

[t]he jury was instructed that if it found that the defendant or one of his accomplices shot the deceased in an effort to commit a crime, he would be guilty of murder. The murder conviction was reversed and the case remanded because the trial court failed to give converse instructions proffered by defendant which required a verdict of not guilty if the jury found that the fatal shot was fired by someone other than the defendant or someone acting in concert with him. The court without elaboration stated that such an instruction was a correct declaration of the law.

580 S.W.2d at 751. Thus, the essential issue in *Majors* was the failure to give a converse instruction: "[I]t has been repeatedly held in this state that the defendant in a criminal case is entitled, upon request[,] to an instruction setting forth the converse of the state's instruction on the principal fact." 237 S.W. at 488. Nowhere in *Majors*, as Judge Rendlen pointed out in *Moore I*, does there appear "a statement of the rationale for the requirement that the fatal act be performed by defendant or someone acting in concert with him." 580 S.W.2d at 751. Thus, if *Majors* did adopt the agency theory of felony murder, it did so in a highly abbreviated, elliptical fashion. In adopting the proximate cause theory of felony murder, the *Moore I* court did not "explicitly overrule" *Majors* but instead simply noted, surely in further reference to the uncertain nature of the *Majors* holding, that "[i]nsofar as *Majors* * * [is] inconsistent with this opinion, * * * [it]

must no longer be followed." 580 S.W.2d at 753.

The *Moore I* court not only addressed the indistinct nature of *Majors* but also treated the subsequent cases of *State v. Adams*, 339 Mo. 926, 98 S.W.2d 632 (1936), and *State v. Glover*, 330 Mo. 709, 50 S.W.2d 1049, 1053 (1932), in which it was made clear that "[e]ven though the homicide be unintentional, yet if it be committed in the course of perpetrating the felony, and is a natural and proximate result thereof, such as the defendant reasonably was bound to anticipate, * * * the homicide will be first degree murder under the statute." *Glover*, 50 S.W.2d at 1053. After discussing the law of these cases, the *Moore I* court then determined that "[w]hether the fatal act was done by the defendant, an accomplice, another victim, or a bystander is * * not controlling. The significant factor is whether the death was the natural and proximate result of the acts of the appellant or of an accomplice." 580 S.W.2d at 752.

Thus, after *Glover* and *Adams*, it could not be said that the courts of the state of Missouri had without question adopted the agency theory of the felony murder doctrine. A fair issue existed as to whether this or the proximate cause theory was the rule. Indeed, this was the conclusion reached by the Missouri Court of Appeals in its postjudgment review of Moore's conviction:

In light of the test which the Missouri Supreme Court adopted in *Glover* in 1932, we think that since the victim's death was the natural and proximate result of defendant's actions, movant was put on notice that his conduct would be considered first degree murder. Consequently, the construction put on * * * [the felony murder statute] by the Missouri Supreme Court could not be considered to be "unexpected" or "indefensible" and can be given retroactive application to defendant without violating the due process clause of the United States Constitution.

*Moore v. State*, 651 S.W.2d 578, 581 (Mo. Ct.App.1983).

This court today seeks to subordinate *Glover* and *Adams* to *Majors*, arguing that

those cases address only the second phase of a two-part process in the agency theory of felony murder. The court argues that under this theory the state must first identify the defendant or an accomplice as a killer, and then show that "the killing was a natural and proximate result of the felony." *Supra* at 1256. Under the court's analysis, then, *Glover* and *Adams* accept *sub silentio* the threshold requirement of identity in the agency theory. Identity, however, may just as easily be subsumed to the notion of natural and proximate results. Those states which follow the proximate cause theory of felony murder simply make the inquiry as to identity a part of the rule itself. Identification then becomes part of the general issue of foreseeability: Would someone committing a felony reasonably expect that someone other than himself or his accomplice might kill someone in the course of the felony? But this, of course, is the very test that *Glover* and *Adams* establish.

Thus, the holding of *Majors* is limited, since that case primarily involved the propriety of the refusal of a converse instruction. Insofar as *Majors* did adopt the agency theory of felony murder, Missouri's courts clearly have viewed *Glover* and *Adams* as intervening cases presenting a different approach to the felony murder doctrine. In failing to give deference to the Missouri Supreme Court's holding in Moore's case, the court overlooks the command of *Wainwright v. Goode* that "the views of the state's highest court with respect to state law are binding on the federal courts." 104 S.Ct. at 382.

Further, the court's holding today stems from a misapplication of the statement in *Bouie* that "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964) (quoting J. Hall, *General Principles of Criminal Law* 61 (2d ed. 1960)). *Bouie* surely does not suggest that a state supreme court cannot clarify an ambiguity in its criminal law—something

quite different from construing statutes in an unexpected and indefensible way—without offending a defendant's due process rights. In addition, *Bouie* involved a new interpretation of a breach-of-the-peace ordinance violated in a sit-in demonstration. The result was to create criminal penalties where none had before existed. The *Bouie* court limited its holding by noting that "[a]pplication of this rule is particularly compelling where, as here, the petitioner's conduct cannot be deemed improper or immoral." 378 U.S. at 362, 84 S.Ct. at 1707. Here, in contrast, when Moore participated in the robbery, he realized that resistance might follow. His conduct was unlawful from the beginning, which, of course, is reason for application of the felony murder rule. The net result is that the court today stretches *Bouie* far beyond its reasoning and its holding.

As the court today in freeing Brian Keith Moore does violence to *Wainwright, Bouie,* and the Missouri courts' interpretation of the law of their state and substitutes its own misreading of that law, I dissent.

Ross, Circuit Judge, filed dissenting opinion.