OPINION
Defendant, Christopher Dixon, appeals from his conviction and sentence for felony murder and aggravated robbery.
On September 30, 1999, Dixon and his cousin Sherman Lightfoot made plans to rob the Jiffy Lube located at 3931 Salem Avenue in Dayton, Ohio. In preparation for the robbery, Dixon and Lightfoot obtained latex gloves and "Jason" masks, which were popularized in the movie, "Friday the 13th." At approximately 6:15 p.m., the two men drove a blue Camaro to the Jiffy Lube, parking it across the street. Dixon was wearing an orange-colored hooded sweatshirt, while Lightfoot was wearing a white hooded sweatshirt.
Dixon and Lightfoot entered the Jiffy Lube and Dixon grabbed one of the employees, Gregory Anderson. Lightfoot pointed a gun in Anderson's face, and the two robbers demanded to know where the money was located. Anderson told them it was in the office. Dixon and Lightfoot then took Anderson to the office. Anderson told them that only the manager had the key to the drawer where the money was kept. Lightfoot instructed Anderson to call for the manager. Anderson complied and the store manager, Michael McDonald, came to the office. At that point Lightfoot pointed the gun in McDonald's face.
McDonald began struggling with Lightfoot over the gun. During the struggle, the gun fired once. When Lightfoot momentarily stumbled and fell backward during the struggle, McDonald gained control over the gun. Lightfoot immediately regained his balance, and both he and Dixon ran out of the store. McDonald fired several shots in the direction of the fleeing suspects. Dixon ran back to the Camaro, got in and sped away. Lightfoot fell to the ground in the parking lot as a result of a gunshot wound to the head. Lightfoot subsequently died at Good Samaritan Hospital. After being arrested, Dixon admitted to police his involvement in the Jiffy Lube robbery.
Dixon was indicted on one count of felony murder, R.C. 2903.02(B), and one count of aggravated robbery, R.C. 2911.01(A)(1). A firearm specification, R.C. 2941.145, accompanied each charge. Prior to trial Defendant moved to dismiss the felony murder charge, arguing that it violated his constitutional right to equal protection under the law. The trial court overruled Dixon's motion to dismiss. Dixon once again raised this same issue via his Crim.R. 29 motion, which the trial court also overruled.
Following a jury trial, Dixon was found guilty of both felony murder and aggravated robbery, and the accompanying firearm specifications. The trial court sentenced Dixon to fifteen years to life on the felony murder charge, and ten years on the aggravated robbery, said sentences to be served concurrently. The trial court also merged the two firearm specifications and imposed one additional and consecutive three year term of imprisonment for the use of a firearm.
From his conviction and sentence Dixon has timely appealed to this court.
Before addressing Dixon's assignments of error, we shall address one preliminary matter: Dixon's request for oral argument which he made in the last line of his "Brief of Appellant."
We cannot honor Dixon's request. Loc.R. 3 of this court requires that requests for oral argument be made by separate motion. Absent a separate motion, this court is unaware that oral argument has been requested until it is too late to schedule it. State v. Hall (Feb. 4, 2000), Greene App. No. 99CA94, unreported. As Judge Fain has explained:
 [t]he judges of this court do not read the briefs until after the appeal has either been scheduled for oral argument or scheduled for submission without argument. In other words, the judges of this court do not customarily read the briefs until all of the briefs have been filed and the case is ripe for submission. Reading all the briefs in one sitting, when the case is ripe for decision, is the most efficient way to process the appeal.
 Because the briefs are customarily not read until after an appeal has been either scheduled for oral argument or submitted without argument, our Loc.R.3 requires that a request for oral argument be upon written motion filed not more than fourteen days after the date the Answer Brief is either filed or is due. At that time, the case can be scheduled appropriately either for oral argument or for submission without argument. State v. Lloyd (May 17, 1996), Montgomery App. No. 15210, unreported.
Dixon did not file a separate written motion requesting oral argument. His request for oral argument he made in his appellate brief is untimely, and is therefore denied.
 FIRST ASSIGNMENT OF ERROR DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHT TO EQUAL PROTECTION UNDER THE LAW WAS VIOLATED WHEN HE WAS CONVICTED OF FELONY MURDER PURSUANT TO R.C. 2903.02(B)
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED HIS PRETRIAL MOTION TO DISMISS AND CRIMINAL RULE 29 MOTIONS FOR ACQUITTAL.
The issues raised in these two assignments of error are identical, and will be addressed together.
Dixon argues that the State's decision to charge, convict and sentence him for felony murder violated his equal protection rights, because the felony murder statute, R.C. 2903.02(B), gives a prosecutor "unfettered discretion" to charge a person with felony murder without having to prove anything more than is required under the involuntary manslaughter statute, R.C. 2903.04(A). In other words, Dixon complains that the felony murder statute prohibits the same conduct as the involuntary manslaughter statute, yet those convicted of felony murder suffer a more severe punishment. In support of his argument, Dixon cites State v. Wilson (1979), 58 Ohio St.2d 52, which held that if two criminal statutes "prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause."
R.C. 2903.02(B) provides:
 No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
Involuntary manslaughter is defined in R.C. 2903.04(A):
 No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
With respect to Dixon's equal protection argument, the issue is whether both statutes require the State to prove identical elements while prescribing different penalties. The test is "whether, if the defendant is charged with the elevated crime, the State has the burden of proving an additional element beyond that required by the lesser offense." Wilson, supra., at 55.
A comparison of the felony murder statute, R.C. 2903.02(B), and the involuntary manslaughter statute, R.C. 2903.04(A), reveals that they do not prohibit identical activity and require identical proof. Causing another's death as a proximate result of committing any felony, which is sufficient to prove involuntary manslaughter, is not always or necessarily sufficient to prove felony murder. In order to prove felony murder the State is required to prove more: that the underlying felony is an offense of violence, defined in R.C. 2901.01(A)(9), that is a felony of the first or second degree, and not a violation of R.C. 2903.03 or 2903.04.
While proof of felony murder, R.C. 2903.02(B), would always and necessarily prove involuntary manslaughter, R.C. 2903.04(A), the converse is not true. Proof of involuntary manslaughter is not sufficient to prove felony murder except in those particular cases where an additional requirement is met: the underlying felony is an offense of violence that is a felony of the first or second degree. Because felony murder requires proof of this additional requirement, Dixon's equal protection argument lacks merit. Wilson, supra. Felony murder carries a higher penalty than involuntary manslaughter because the harm involved in committing the underlying offense is greater; an offense of violence that is a felony of the first or second degree, versus any felony. Thus, R.C. 2903.02(B) bears a rational relationship to a legitimate governmental interest, protecting the safety of citizens. State v. Bowes (May 11, 2001), Lake App. No. 99-L-075, unreported.
In this particular case Dixon's underlying felony offense was aggravated robbery, R.C. 2911.01(A)(1), which is an offense of violence and a felony of the first degree. Thus, proof of involuntary manslaughter on the particular facts in this case would also prove felony murder. Nevertheless, Dixon's equal protection argument still lacks merit.
One year after the Ohio Supreme Court's decision in Wilson, supra, the United States Supreme Court issued its decision in United States v. Batchelder (1979), 442 U.S. 114, which held that, when a defendant's conduct violates more than one criminal statute, the government may prosecute under either, even when the two statutes prohibit the same conduct but provide for different penalties, so long as the Government does not discriminate against any class of defendants based upon some unjustifiable standard. The Equal Protection Clause is not violated simply because the defendant is convicted and sentenced under the statute carrying the greater penalty. Id. Rather, equal protection prohibits selective enforcement of criminal laws based upon an unjustifiable standard such as race, religion, or other arbitrary classification. No such claim has been made by Dixon in this case.
The Batchelder Court rejected the same argument Dixon makes here, that prosecutors should not have "unfettered discretion" in deciding whether to charge a defendant under the statute providing the greater penalty:
. . . there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one or two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. (Citations omitted.) Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced. Id., at 125.
Dixon's other argument he makes in these assignments of error presents a more difficult question: whether a defendant can be convicted of felony murder for the death of his accomplice when that killing was committed by the intended victim of the underlying felony offense in the course of resisting that crime. Courts throughout the various states are divided on this issue, depending upon several variables including the specific language used in their respective felony murder statutes, the theory of criminal responsibility adhered to, and whether specific intent to cause death must be proved as an element of the offense. See 56 ALR3d 239; 89 ALR4th 683. In arguing that he cannot be convicted of felony murder as a result of the fatal shooting of his accomplice, Lightfoot, by the victim of the Jiffy Lube robbery, Dixon relies upon decisions from other states, and the common law understanding that felony murder involved a killing by either the defendant or one of his accomplices during the course of committing and in furtherance of the underlying felony.
At common law, murder was the unlawful killing of a human being with malice aforethought: an intentional killing with expressed malice. Katz 
Gianelli, Criminal Law, Section 95.2 (1996). Over time, common law murder expanded to include situations involving "implied malice," one of which was a killing committed during the commission of a felony: felony murder. Id. Under the felony murder doctrine, the malice or intent involved in the underlying felony was transferred to the killing.
Limitations developed at common law on the felony murder doctrine. First, some courts required that the underlying felony be independent of the killing, which excluded manslaughter as the predicate offense. Id. Second, death had to be foreseeable, otherwise the underlying felony could not be considered the proximate cause of the death. Id. Third, there was a temporal limitation that the death had to occur during commission of the felony, during an attempt to commit the felony, or while fleeing immediately after attempting or committing the felony. Id. Fourth, the death of a co-felon was often not punishable as felony murder if the death was caused by some innocent third party, such as a victim, bystander or police officer. Id.
In Ohio all crimes are statutory, and there is a "felony murder" component in both the aggravated murder statute, R.C. 2903.01(B), and the murder statute, R.C. 2903.02(B). The felony murder component of the murder statute came into existence pursuant to the June 30, 1998, amendment to that statute. Unlike the felony murder component of the aggravated murder statute, R.C. 2903.01(B), the felony murder component of the murder statute, R.C. 2903.02(B), does not require any purpose or specific intent to cause death. The provision states:
 No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second decree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
The question presented in this case is whether Dixon can be convicted of felony murder when he and an accomplice, Lightfoot, joined together in the commission of an armed robbery, and during the commission of that offense the intended victim of that robbery shot and killed the accomplice, Lightfoot. Phrased in the language of R.C. 2903.02(B), the question is: did Dixon cause the death of Lightfoot as a proximate result of Dixon committing or attempting to commit aggravated robbery? To answer this question we must examine the specific wording used in R.C. 2903.02(B), and determine the intent of the General Assembly in writing it.
With respect to felony murder, two opposing theories of criminal responsibility exist. Under the "agency theory," the State must prove that either the defendant or someone acting in concert with him, an accomplice, killed the victim and that the killing occurred during the perpetration of and in furtherance of the underlying felony offense. Moore v. Wyrick (8th Cir., 1985), 766 F.2d 1253; State v. Chambers (1977),53 Ohio App.2d 266; 56 ALR3d 239. Under the "proximate cause theory," it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of Defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience. Id; State v. Bumgardner (August 21, 1998), Greene App. No. 97-CA-103, unreported; State v. Lovelace (1999), 137 Ohio App.3d 206.
Reviewing the precise wording used in the felony murder statute at issue, R.C. 2903.02(B), that provision states that "no person shall cause the death of another as a proximate result of" committing or attempting to commit an offense of violence that is a felony of the first or second degree. That wording clearly indicates an intent on the part of the Ohio legislature to adopt a proximate cause standard of criminal liability.
In State v. Chambers, supra, the Court of Appeals reviewed the involuntary manslaughter statute, R.C. 2903.04(A), the operative language of which is virtually identical to R.C. 2903.02(B) with respect to causation: "no person shall cause the death of another . . . as a proximate result of" committing or attempting to commit a felony. Upon facts nearly identical to those in the case before us, where defendant's accomplice was shot and killed by the victim of the underlying felony offense while resisting that crime, the Court of Appeals in Chambers concluded that defendant could be held criminally liable for involuntary manslaughter for the death of his accomplice. The Chambers Court reasoned that the Ohio legislature had manifested its intent, through the precise language used in the involuntary manslaughter statute, to follow the proximate cause theory, rather than agency, as the basis for criminal responsibility.
We conclude that the proper interpretation of the felony murder statute at issue in this case compels the same result as that reached in Chambers, because R.C. 2903.02(B) employs the exact same causation language, which demonstrates the legislature's intent to adopt proximate cause as the standard of criminal responsibility for R.C. 2903.02(B).
In State v. Lovelace, supra, the Court of Appeals stated:
 Generally, for a criminal defendant's conduct to be the proximate cause of a certain result, it must first be determined that the conduct was the cause in fact of the result, meaning that the result would not have occurred "but for" the conduct. Second, when the result varied from the harmed intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable. LaFave Scott, Criminal Law (1972), Section 35, 246.
Id., at 216.
Obviously, the death of Lightfoot would not have occurred when it did but for Dixon's conduct, acting in concert with Lightfoot, in robbing the Jiffy Lube at gunpoint. Moreover, the death of Lightfoot was foreseeable or should have been foreseeable to Dixon. Foreseeability is determined from the perspective of what the defendant knew or should have known, when viewed in light of ordinary experience. Lovelace, supra. It is not necessary that Dixon be able to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by Dixon. Id; State v. Losey (1985),23 Ohio App.3d 93.
In State v. Bumgardner, supra, this court observed:
 The term "proximate result" as it is used in the definition of involuntary manslaughter resembles the concept of "proximate cause" in that the defendant will be held responsible for those foreseeable consequences that are known to be, or should be known to be, within the scope of the risk created by his conduct. Losey, supra, citing State v. Chambers (1977), 53 Ohio App.2d 266, 373 N.E.2d 393. "[A] defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; [but] he will be held responsible for consequences which are direct, normal, and reasonably inevitable — as opposed to extraordinary or surprising — when viewed in the light of ordinary experience." Id. Thus, if death could be reasonably anticipated by an ordinarily prudent person as likely to result from the circumstances created by the defendant in the commission of a felony, he may be convicted of involuntary manslaughter regardless of whether he intended to cause a death. (Emphasis added.)
Clearly, the shooting which killed Lightfoot was within the scope of the risk created by Dixon when he and Lightfoot robbed the Jiffy Lube at gunpoint. Dixon planned the robbery with Lightfoot, was an active participant during the robbery, and knew a deadly weapon was being employed to facilitate the robbery. The natural inclination of persons present during a robbery to forcibly defend themselves, their family and friends, and their property from theft and criminal aggression is a primal human instinct. Chambers, supra. Every robber or burglar knows when he attempts his crime that he is inviting dangerous resistance. Id. Add to this highly charged atmosphere the use of a firearm to facilitate the robbery, and the risk of serious physical harm or death to any person present, be it the intended victims, bystanders, or the wrongdoers themselves, becomes highly foreseeable. See State v. Meek (1978),53 Ohio St.2d 35.
The causal relationship between Dixon's criminal conduct and Lightfoot's death was not so remote or improbable as to be unforeseeable by any reasonable person. The death of Lightfoot was a natural, logical, and reasonably foreseeable consequence of the armed robbery that Dixon and Lightfoot were committing at the time, when viewed in the light of ordinary human experience. Accordingly, pursuant to the proximate cause standard of criminal responsibility adopted in R.C. 2903.02(B), Dixon may be held criminally liable for the death of his accomplice, Lightfoot, which he caused as a proximate result of committing or attempting to commit aggravated robbery. The trial court properly denied Dixon's motions to dismiss the felony murder charge.
The first and second assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED HIS REQUESTS FOR JURY INSTRUCTIONS.
Dixon argues in this assignment of error that the trial court abused its discretion when it refused to give his requested jury instructions on "proximate result" and "intervening/superseding causes."
It is prejudicial error to refuse to give a requested jury instruction which is pertinent to the case, states the law correctly, and is not covered by the general charge. State v. Scott (1986), 26 Ohio St.3d 92. A criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all of the issues raised by the evidence. State v. Williford (1990), 49 Ohio St.3d 247 . It is not incumbent upon the trial court, however, to give the defendant's requested instructions verbatim; the trial court may use its own language to communicate the same legal principles. State v. Sneed (1992), 63 Ohio St.3d 3. A trial court does not abuse its discretion in failing to give a defendant's proposed jury instructions when the substance of those requested instructions is included in the court's general charge to the jury. Id.
A trial court's refusal to give requested jury instructions is reviewed on appeal using an abuse of discretion standard. State v. Elijah (July 14, 2000), Montgomery App. No. 18034, unreported. An abuse of discretion connotes more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.
During the trial Dixon timely filed written requests for various jury instructions. With respect to the felony murder charge, Dixon requested that the trial court give this instruction on "proximate result:"
 The term "proximate result" means that a person is criminally responsible for causing the death of another only where the consequences of his conduct are direct, normal and reasonably inevitable when viewed in the light of ordinary experience. He is not responsible for consequences no reasonable person could expect to follow from his conduct.
Dixon also requested this instruction on superceding/intervening causes:
 If the cause of death of another is a result of a superceding cause or intervening act of a third person for which the third person may be independently liable, the State has failed to prove the element of cause as defined.
The trial court did not give Dixon's requested jury instructions verbatim, but instead instructed the jury on causation as follows:
 The State charges that in committing the offense of aggravated robbery, the defendant caused the death of Sherman Lightfoot.
 Cause is an essential element of the offense of felony murder. Cause is an act which, in a natural and continuous sequence, directly produces the death and without which it would not have occurred.
 The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act. The defendant is also responsible for the natural and foreseeable consequences that follow in the ordinary course of events from the act.
 There may be one or more causes of an event. However, if a defendant's act was one cause, then the existence of other causes is not a defense.
 The defendant is responsible for the natural consequences of the defendant's unlawful act even though death was also caused by the intervening act of another person.
 The death is the result of the defendant's act when it is produced in a natural and continuous sequence and would not have occurred without the act.
(T. 603-604)
The jury instructions given by the trial court on proximate cause (proximate result) and intervening causes are identical to the pattern instructions recommended in 4 Ohio Jury Instructions, Sections 409.55 and 409.56. On the evidence presented in this case, there was more than one cause of Lightfoot's death. The intervening act of the robbery victim, McDonald, in shooting Lightfoot was the most immediate and obvious cause of Lightfoot's death, but not the sole and exclusive cause. The perpetration of the armed robbery by Dixon, during which Lightfoot was shot, was also a proximate cause of Lightfoot's death. Thus, the intervening act of McDonald is not a defense. See 4 Ohio Jury Instructions, Section 409.56(3). By engaging in the armed robbery of the Jiffy Lube, in concert with Lightfoot, Dixon set in motion a chain of events, one of the reasonably foreseeable consequences of which was the death of Lightfoot. Thus, Dixon's conduct was a proximate cause of Lightfoot's death, for which he remains criminally responsible. (See our disposition of the first and second assignments of error). The court's general charge to the jury was correct and sufficient to convey the substance of those portions of Dixon's requested instructions that were correct statements of law. Thus, we cannot say that the trial court abused its discretion, as that term is defined by law, in refusing to give Dixon's proposed jury instructions.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR DEFENDANT-APPELLANT'S CONVICTION UNDER R.C. 2903.02(B) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his final assignment of error Dixon challenges his conviction for felony murder, arguing that in view of the evidence presented, the death of his accomplice, Lightfoot, was not a natural, foreseeable consequence of his unlawful conduct in engaging in the aggravated robbery of the Jiffy Lube. In other words, Dixon argues that the evidence presented was legally insufficient to prove that he "caused" Lightfoot's death.
Although Dixon moved for acquittal pursuant to Crim.R. 29 at the close of the State's case, that motion was not based upon any alleged insufficiency in the evidence, but rather upon Dixon's claim that it was inappropriate for the State to charge him with felony murder, rather than involuntary manslaughter, in these situations; the same issue he raised in his pretrial motion to dismiss the felony murder charge. Thus, by failing to raise a sufficiency of the evidence argument in the trial court below, Dixon has waived that issue for purposes of appeal. State v. Knapp (January 26, 2001), Montgomery App. No. 18457, unreported. We will nevertheless consider Dixon's claim under a plain error standard. Id. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91.
We have previously discussed in detail, in disposing of the first and second assignments of error, the fact that the death of Dixon's accomplice, Lightfoot, was clearly within the scope of the risk created by Dixon when he, acting in concert with Lightfoot, robbed the Jiffy Lube at gunpoint. When viewed in the light of ordinary experience, Lightfoot's death was a natural, logical, and reasonably foreseeable consequence of Dixon's unlawful conduct. We will not repeat our previous discussion here. Suffice it to say, that in viewing the evidence presented by the State in a light most favorable to the State, which we must do when determining the sufficiency of the evidence, State v. Jenks (1991),61 Ohio St.3d 259, a rational trier of fact could find beyond a reasonable doubt that Dixon "caused" Lightfoot's death as a proximate result of committing or attempting to commit aggravated robbery. The trial court did not commit plain error in convicting Dixon based upon the evidence presented.
The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.
Hon. George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.